MURPHY v MICHIGAN BELL TELEPHONE COMPANY

Docket No. 96265. Argued January 11, 1994 (Calendar No. 5). Decided
August 31, 1994.

Following the death of Dennis Wainman in 1972 in the course of
his employment with Michigan Bell Telephone Company, work-
er's compensation death benefits were paid to his widow, Can-
dace, and his two children. When she remarried in 1973, to
Charles Murphy, Michigan Bell ceased payment of benefits to
her pursuant to MCL 418.335; MSA 17.237(335), but voluntarily
continued to pay benefits for the two children until the expira-
tion of the 500-week period required by MCL 418.321; MSA
17.237(321). Thereafter, Candace Murphy sought benefits be-
yond the 500-week period for her children, aged thirteen and
nine, on the basis of the provisions of §§ 321 and 335 of the
worker's compensation act permitting payments for dependent
children. Michigan Bell argued that, although the children
were under sixteen years of age at the end of the 500-week
period, they no longer were dependent on their deceased father
because they had been adopted by Charles Murphy and there
was no factual showing of continued dependency on their
deceased father. A hearing referee ordered the continuation of
benefits until the children were sixteen. The Worker's Compen-
sation Appeal Board affirmed. The Court of Appeals, DANHOF,
C.J., and SHEPHERD and DOCTOROFF, JJ., remanded for clarifica-
tion (Docket No. 128256). On remand, the WCAB ruled that
Michigan Bell was obligated under §§ 331, 335, and 353 to pay
benefits until the children were eighteen. After remand, the
Court of Appeals, SULLIVAN, P.J., and MACKENZIE and I. B.
TORRES, JJ., reversed in an opinion per curiam, holding that
the basis for the permissive ordering of continued weekly
benefits is the recipient's continued dependency. It concluded,
on the basis of *Theodore v Packing Materials, Inc,* 396 Mich
152 (1976), that a child who is adopted ceases to be factually
dependent on the deceased father, and that in this case the
adoption destroyed the rationale for the conclusive presumption
of the children's dependency on their deceased father and
created a legal relationship in which the adoptive father as-
sumed the legal obligation to provide for the children, thereby

supplanting the legal relationship that gave rise to the statutory presumption (Docket No. 128256). The plaintiff appeals.

In separate opinions, the Supreme Court *held:*

The statutory conclusive presumption of dependency continues until the age of sixteen. After the expiration of the 500-week benefit period, benefits may continue to be paid to dependents under age sixteen, without a factual determination of dependency, at the discretion of the hearing referee.

Justice RILEY, joined by Justice BOYLE, stated that the conclusive presumption of dependency automatically terminates at the end of the statutorily mandated 500-week period. Thereafter, the continuation of benefits to dependents under a certain age is a discretionary decision of the Worker's Compensation Appellate Commission, requiring a factual finding of continued dependency. A finding to the contrary is outside the scope of the Worker's Disability Compensation Act and constitutes the sanction of economic waste.

Section 341 clearly indicates the legislative intent to maintain the conclusive presumption of dependency except as stated otherwise in the act. The use of the term "may" instead of "shall" in § 321 indicates discretionary, rather than mandatory, action. Section 335 specifically requires the termination of benefits to a dependent wife upon remarriage and a reassessment of benefits payable to dependent children. Section 331(1)(b) does not require the continued presumption of dependency for children under the age of sixteen in cases of remarriage of the surviving spouse or the end of the 500-week benefit period. Instead it defines who is entitled to the conclusive presumption of total dependency, i.e., children under the age of sixteen, rather than how long the conclusive presumption remains in effect.

In this case, the presumption of dependency was terminated at the end of the 500-week period under the terms of § 321, and it was incumbent upon the claimants to establish a continued factual dependency in order to justify further benefits.

Justice BRICKLEY, joined by Justice GRIFFIN, concurring in part and dissenting in part, stated that there is a conclusive presumption of dependency until age sixteen, but despite its existence benefits are not automatically continued until age sixteen. Rather, continuing benefits may be awarded at the discretion of the magistrate.

While the conclusive presumption of dependency dispels the need for a factual determination of dependency and renders the dependent eligible for further benefits, it does not guarantee that such benefits will be awarded. Dependency was intended

as a prerequisite to, but not a guarantee of continuing benefits. Benefits are not to be awarded automatically at the end of the statutory 500-week period; rather the magistrate has discretion to award continuing benefits, and may deny continuing benefits to wholly dependent persons.

Justice LEVIN, joined by Chief Justice CAVANAGH, and Justice MALLETT, stated that a referee may order the payment of worker's compensation death benefits beyond the expiration of the 500-week statutory limitation period for a child who was adopted by another person after the parent's death.

The worker's compensation act provides that if death results from an injury, benefits are payable for 500 weeks from the date of death, and that if, at the expiration of the 500-week period, a dependent is less than twenty-one years of age, a hearing referee may order the employer to continue to pay benefits until the person reaches the age of twenty-one. The act further explicitly provides that a child under the age of sixteen is conclusively presumed to be wholly dependent for support on a deceased employee. Merely because the provisions of the act for the continuation of death benefits beyond 500 weeks to underage dependents are stated in permissive terms, it does not follow that the conclusive presumption of dependency does not continue until the age of sixteen. Reading the act in its entirety, it is consistent with the concept of permissiveness to find that a referee has no discretion but to order the continuation of benefits until a dependent is sixteen.

Section 341 of the act provides that questions regarding who is a dependent and the extent of the dependency are to be determined as of the date of the injury of an employee, and that the right to any death benefits becomes fixed at that time, irrespective of any subsequent change in conditions, except as otherwise specifically provided in §§ 321, 331, and 335. Neither §§ 321, 331, or 335 nor the permissive "referee may order" language of §§ 321 and 335 specifically otherwise provides. Thus, in this case, the questions concerning the extent of the children's dependency must be determined as of the date of injury of their father, and their right to any death benefit became fixed as of the date of his death, irrespective of any subsequent change in conditions including their adoption by Charles Murphy, and without regard to whether after they were adopted they continued to be factually dependent on their deceased father.

Vacated and remanded.

200 Mich App 422; 505 NW2d 3 (1993) vacated.

*Rapaport, Pollok, Farrell & Waldron, P.C.* (by

*Steven J. Pollok* and *Kassia L. Snyder)*, for the plaintiff.

*Lacey & Jones* (by *Michael T. Reinholm*) for the defendant.

RILEY, J. Today we are called upon to consider the duration of the total dependency presumption in cases involving minors entitled to death benefits under § 321 of the Worker's Disability Compensation Act. The language of the statutes at issue makes clear that the conclusive presumption of dependency automatically terminates at the end of the statutorily mandated 500-week period. Thereafter, the continuation of benefits to dependents under a certain age is a discretionary decision of the Worker's Compensation Appellate Commission. A discretionary decision to continue benefits requires a factual finding of continued dependency in order to conform with the statutory mandates of the WDCA. Finally, the logic behind this mode of procedure is elementary: employers obligated to pay death benefits under the WDCA should not be required to pay death benefits after the period of statutory presumption has expired or has otherwise been terminated by statute without a showing of continued need.[1] A finding to the contrary is outside the scope of the WDCA and constitutes the sanction of economic waste.

I

Dennis Wainman was killed while driving a truck in the course of his employment with Michi-

---

[1] Cf. *Webster v Rotary Electric Steel Co*, 321 Mich 526, 532; 33 NW2d 69 (1948) (the failure of the worker's compensation commission to lower an award after a spouse's remarriage constituted "the imposition of a penalty upon employers" and required reversal of an award).

gan Bell Telephone Company in February, 1972.
Worker's compensation death benefits were paid to
his widow, Candace, and his two children. In June
1973, she was remarried to Charles Murphy. Mich-
igan Bell thereafter ceased payment of benefits to
her pursuant to MCL 418.335; MSA 17.237(335),
but voluntarily continued to pay benefits for the
two children until the expiration of the 500-week
period required by MCL 418.321; MSA 17.237(321).

Thereafter, Candace Murphy petitioned for a
hearing of her claim that the children aged thir-
teen and nine, were entitled to benefits beyond the
500-week period, on the basis of §§ 321 and 335 of
the worker's compensation act, as dependent chil-
dren. Michigan Bell argued that, although the
children were under sixteen years of age at the
end of the 500-week period, they no longer were
dependent on their deceased father because they
had been adopted by Charles Murphy and there
was no factual showing of continued dependency
on their deceased father.

A hearing referee ordered the continuation of
benefits until the children were sixteen, and the
Worker's Compensation Appeal Board affirmed.
The Court of Appeals remanded for clarification.
On remand, the WCAB ruled that Michigan Bell
was obligated under §§ 331, 335, and 353 to pay
benefits until the children were eighteen. After
remand, the Court of Appeals reversed in an opin-
ion per curiam, holding that the basis for the
permissive ordering of continued weekly benefits is
the recipient's continued dependency, concluding,
on the basis of *Theodore v Packing Materials, Inc,*
396 Mich 152; 240 NW 2d 255 (1976), that a child
who is adopted ceases to be factually dependent on
the deceased father. It stated further that in this
case the adoption destroyed the rationale for the
conclusive presumption of the children's depen-

dency and created a legal relationship in which the adoptive father assumed the legal obligation to provide for the children, thereby supplanting the legal relationship that gave rise to the statutory presumption.

We granted leave to appeal. 444 Mich 866 (1993).

II

The starting point of this Court's inquiry is to consider how to interpret the statutes involved. The cardinal rule of statutory construction is to discern and give effect to the intent of the Legislature. *Farrington v Total Petroleum, Inc,* 442 Mich 201, 212; 501 NW2d 76 (1993). Where a statute is clear and unambiguous, interpretation is unnecessary. *Franks v White Pine Copper Div,* 422 Mich 636, 650; 375 NW2d 715 (1985); *Dussia v Monroe Co Employees Retirement System,* 386 Mich 244, 249; 191 NW2d 307 (1971). When different statutes address the same subject, courts must endeavor to read them harmoniously and give them reasonable effect. *House Speaker v State Administration Bd,* 441 Mich 547, 568; 495 NW2d 539 (1993); *Huron Twp v City Disposal Systems, Inc,* 201 Mich App 210, 212; 505 NW2d 897 (1993).

III

A

The specific question we are asked to answer is whether the conclusive presumption of dependency terminates at the end of the 500-week period. Accordingly, it is appropriate to focus our inquiry on certain provisions of the WDCA. We are aided by a particular statutory provision in our search to

determine the existence and extent of dependency for death benefits recipients. MCL 418.341; MSA 17.237(341) provides:

> Questions as to who constitutes dependents and the extent of their dependency shall be determined as of the date of the injury to the employee, and their right to any death benefit shall become fixed as of such time, irrespective of any subsequent change in conditions *except as otherwise specifically provided in sections 321, 331 and 335.* [Emphasis added.][2]

This language, which clearly indicates the legislative intent to maintain the conclusive presumption *except* as stated otherwise, requires no interpretation regarding the point that the conclusive presumption is erased under prescribed circumstances. See *Farrington, Franks,* and *Dussia, supra.* Creative construction that disregards the removal of the conclusive presumption under appropriate circumstances would therefore violate the legislative intent. With this in mind, we now turn to consideration of the statutes wherein one may find the circumstances removing the conclusive presumption.

---

[2] The language of this statute has remained unchanged since before Dennis Wainman's death to the present day, despite sweeping changes made in the WDCA in the last decade.

Furthermore, this Court's inquiry into the issue involved in this case properly begins with consideration of § 341. Its title and its import evidence the fact that its specific purpose is to govern the existence and extent of any presumptions of dependency, while the other statutes define situations best described as categories of entitlement. See 2B Singer, Sutherland Statutory Construction (5th ed), § 51.05, p 174 ("Where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is any conflict, the latter will prevail"). Accordingly, we are required to treat the mandates of § 341 as paramount to sentences in other statutes that appear to be facially inconsistent when taken out of context.

B

First, MCL 418.321; MSA 17.237(321) provided, in relevant part, for death benefits as follows at the time of the decedent's injury and death:

> [F]or a period of 500 weeks from the date of death. If at the expiration of the 500-week period any such wholly or partially dependent person is less than 21 years of age, a hearing referee . . . *may* order the employer to continue to pay the weekly compensation or some portion thereof until such . . . person reaches the age of 21. [Emphasis added.]

The emphasized language indicates the discretionary nature of a hearing referee's ruling on the payment of continued benefits following the expiration of the 500-week period. In fact, use of the term "may" instead of the term "shall" indicates discretionary, rather than mandatory, action.[3] It would be anomalous to hold that the hearing referee *must* order the continuance of death benefits after the 500-week period as a matter of law. To do so would nullify the quoted language of § 341 in violation of established precedent,[4] would violate the clear legislative intent in § 321 of preserving discretion in hearing referees, see *Farrington, Franks,* and *Dussia, supra,* and would lead to forcing an employer to pay continued death benefits even in cases where the presumption has terminated *and* the legal and economic status of

---

[3] See *Lake Angelus v Oakland Co Rd Comm,* 194 Mich App 220, 224; 486 NW2d 64 (1992) ("The use of the term 'shall' in a statute indicates mandatory, rather than discretionary, action"); *Mollett v City of Taylor,* 197 Mich App 328, 339; 494 NW2d 832 (1992).

[4] See, e.g., *Feld v Robert & Charles Beauty Salon,* 435 Mich 352, 364; 459 NW2d 279 (1990) ("every word of a statute should be given meaning and no word should be treated as surplusage or rendered nugatory if at all possible").

the claimant would make any further payments an absurdity.[5]

Second, the WDCA also specifically provides for the termination of benefits payable to a dependent wife upon remarriage and a reassessment of benefits payable to dependent children. At the time of Dennis Wainman's death, MCL 418.335; MSA 17.237(335) provided:

> Upon the remarriage of a dependant wife receiving compensation, such payments shall cease upon the payment to her of the balance of the compensation to which she would otherwise have been entitled but in no event to exceed the sum of $500.00 . . . . Where, at the expiration of the 500-week period, any such wholly or partially dependent person is less than 21 years of age, a hearing referee *may* order the employer to continue to pay the weekly compensation, or some portion thereof, until such wholly or partially dependent person reaches the age of 21. [Emphasis added.]

In short, hearing referees are ordered to reassess the dependency of *children* at the end of the 500-week period in case of remarriage as well as to terminate an award to formerly dependent wives.[6] There is no indication of any intent on the part of the Legislature to continue the conclusive presumption of total dependency after the statutory period in the case of children whose living parent remarries. Worthy of note is the emphasized lan-

[5] See, e.g., *Reisman v Wayne State Univ Regents,* 188 Mich App 526, 536; 470 NW2d 678 (1991) ("Statutes are to be construed to avoid absurd or unreasonable consequences"); *Webster,* n 1 *supra* at 531. As stated earlier, there is no need to engage in judicial construction of the statutes because of their clarity on this point.

[6] Review of this statute's legislative history reveals that it continues to provide for remarriage of a "dependent wife" rather than a dependent "spouse." However, this Court has already concluded that the terms of this subsection are gender-neutral. See *Day v Foote Memorial Hosp, Inc,* 412 Mich 698; 316 NW2d 712 (1982).

guage that again calls for a hearing referee to exercise discretion regarding whether the facts support a continued award.[7] Thus, hearing referees may order continued benefits for the children of deceased employees as an exercise of the discretion granted in § 335 as well as in § 321. To remove this discretion by judicial fiat certainly violates the clear intent of the Legislature for a factual inquiry into the nature of any continued dependency on the part of a child in cases of *remarriage* even without consideration of the added concerns surrounding legal adoption. See *Farrington, Franks,* and *Dussia, supra.*

Third, MCL 418.331(1)(b); MSA 17.237(331)(1)(b) does not require the continued presumption of dependency in cases of remarriage of the surviving spouse or the end of the 500-week benefits period. Rather, the provision calls for the conclusive presumption of complete dependency for "[a] child under the age of 16 years, or over if physically or mentally incapacitated from earning . . . ." It is clear from the language of § 331 that individuals having prescribed relationships with a deceased employee and who are under the age of sixteen are to be treated as *wholly* dependent. What is not particularly clear is whether the Legislature intended for the age of sixteen years, as found in § 331(1)(b), to represent a termination date for the conclusive presumption. Keeping in mind that we are required to provide an harmonious reading and a reasonable effect to ambiguous language, see *House Speaker, supra,* we conclude that § 331(1)(b) defines only the status of dependency and not its length. In other words, § 331(1)(b) controls the question *who* is entitled to the conclusive presumption of complete dependency and not *how long* the conclusive presumption remains.

---

[7] See n 3 and accompanying text.

In addition, both §§ 321 and 335 target 500 weeks from the date of death as a critical period in cases of death benefits. Any attempt to disregard this commonality would negate a concept that the Legislature considered important enough to mention twice.[8]

Indeed, it is the conclusive presumption provided in § 331(1)(b) that best supports the dissent. However, and as noted above, it is inappropriate to extend this presumption to the statute involving remarriage. We conclude that the presumption in § 331 does not nullify the termination of benefits following the conclusion of the statutory 500-week period provided in § 321 because it would violate the clear legislative intent previously described. Moreover, we are constrained to give an harmonious reading and reasonable effect to different statutes that arguably address the same subject, see *House Speaker* and *Huron Twp, supra,* without creating absurd results.[9] The legislative intent for termination of the conclusive presumption on the happening of certain events, together with the discretion afforded hearing referees to order continued benefits after these events occur, requires the conclusion that § 331(1)(b) relates to the qualification of an individual as a dependent and not how long the conclusive presumption of dependency lasts.[10]

In sum, it is beyond doubt that the Legislature

[8] See n 4.

[9] See n 5.

[10] As previously noted, § 341 calls for the termination of a presumption of dependency under circumstances set forth in §§ 321, 331 and 335. However, § 331 does not contain the type of termination language found in §§ 321 and 335. On the other hand, the negative implication of § 331(1)(b) is that children *over* the age of sixteen are not entitled to the conclusive presumption of total dependency. Thought of in this light, § 331 *does* contain an exception, which in turn leads to an harmonious reading of these statutes in concert. See *House Speaker* and *Huron Twp, supra.*

intended the termination of the conclusive presumption of dependency under certain circumstances. These circumstances are the end of the statutory 500-week period and remarriage. See MCL 418.321, 418.335; MSA 17.237(321), 17.237(335).

IV

While it is clear that the conclusive presumption contained in § 331(1)(b) is not absolute, it is more problematic to discern which of the circumstances contained in § 341, i.e., remarriage (§ 335) or the conclusion of the 500-week period (§ 321), is operative under these facts. Moreover, the inquiry is further complicated by the legal adoption of the dependents involved. However, it is unnecessary to resolve this question at this time because defendant continued to pay death benefits to the two children after their adoption and their mother's remarriage and up to the end of the 500-week period.[11] Accordingly, we conclude that the presumption of dependency was terminated at the end of the 500-week period under the terms of § 321 and that it was incumbent upon the claimants to establish a continued factual dependency in order to justify further benefits.[12] This holding ensures the continuation of benefits in appropriate cases, while providing hearing referees with the opportunity to exercise the discretion that is so clearly part of the statutory scheme. It also avoids

[11] Mention of the 500-week period in § 335 on remarriage strongly suggests a common factor between §§ 321 and 335 regarding the date after which the conclusive presumption of dependency, as provided in § 331(1)(b), expires. However, resolution of this issue is not required under the facts of this case.

[12] In the absence of this presumption, one must resort to the underlying rule that it is a claimant's burden to establish factual dependency. See, e.g., *Runnion v Speidel*, 270 Mich 18, 24; 257 NW 926 (1934).

the absurd result of forcing employers to pay continued benefits where there is no further need.

In conclusion, it is not argued that qualified dependents are entitled to enjoy the conclusive presumption of dependency. Disagreement arises regarding whether this presumption may be terminated before a dependent's reaching a certain age on the happening of specifically delineated events. It must be emphasized that there is no prohibition against a continuation of benefits following the occurrence of one or more of these events as long as hearing referees, within their statutorily authorized discretion, conclude that continued benefits are required. However, the burden of establishing a *continued* need of benefits rests with the same party who must establish the initial entitlement, i.e., the claimant.

Accordingly, we would affirm the decision of the Court of Appeals and remand the case to the WCAC for further proceedings regarding whether claimants are entitled to a continuation of death benefits.

BOYLE, J., concurred with RILEY, J.

BRICKLEY, J. (*concurring in part and dissenting in part*). Although I agree with Justice LEVIN's conclusion that the conclusive presumption of dependency remains in effect until age sixteen, I disagree with Justice LEVIN's holding that the effect of this presumption is to mandate an award of benefits to dependents under age sixteen following the expiration of the 500-week benefit period. Rather, I believe the relevant statutory provisions can best be harmonized by construing dependency as a necessary, but not always sufficient, condition for the continuation of benefits. Under this interpretation, the conclusive presumption of depen-

dency merely enables a dependent under age six-
teen to remain *eligible* for an extension of benefits;
it does *not* automatically require the award of
continuing· benefits to these dependents. Accord-
ingly, I write separately to express my disagree-
ment with Justice LEVIN regarding this issue and
to expound on my interpretation · of the relevant
statutory provisions.

I

### THE CONCLUSIVE PRESUMPTION OF DEPENDENCY

Justice LEVIN concludes that the conclusive pre-
sumption of dependency[1] remains operative until
age sixteen, requiring a magistrate to award con-
tinuing benefits to dependents until age sixteen,
irrespective of whether the sixteenth birthday oc-
curs before or after the initial 500-week benefit
period has expired.[2] While I concur in Justice

---

[1] Section 331 of the Worker's Disability Compensation Act in effect
at the time of Dennis Wainman's death provided in pertinent part:

(1) The following persons shall be conclusively presumed to
be wholly dependent for support upon a deceased employee:

\* \* \*

(b) A child under the age of 16 years, or over 16 years of age
if physically or mentally incapacitated from earning upon the
parent with whom he is living at the time of the death of such
parent. . . . In all other cases questions of dependency, in
whole or in part, shall be determined in accordance with the
fact, as the fact may be at the time of the injury. [MCL 418.331;
MSA 17.237(331).]

[2] See *post* at 120:

Merely because the provisions of the act for the continuation
of death benefits beyond 500 weeks to underage dependents are
stated in permissive terms—"the referee *may* order"—it does
not follow that the conclusive presumption of dependency does
not continue until the dependent reaches the age of sixteen.

Even if the permissive "the referee *may* order" means that
the referee is not obliged to order the continuation of payment

LEVIN's conclusion that the conclusive presumption of dependency remains viable until age sixteen, I cannot conclude that this presumption mandates an automatic award of benefits to those dependents under age sixteen upon the expiration of the initial 500 weeks. Instead, I would hold that, while the conclusive presumption of dependency dispels the need for a factual determination of dependency and renders the dependent eligible for further benefits, it does not guarantee that such benefits will be awarded.

A careful examination of the relevant statutory provisions establishes that the Legislature envisioned dependency as being a prerequisite to, but not a guarantee of, continuing benefits. At the time of Dennis Wainman's death, § 321 provided:

> If death results from the injury, the employer shall pay . . . to the dependents of the employee, wholly dependent upon his earnings for support at the time of the injury, a weekly payment equal to 2/3 of his average weekly wages for a period of 500 weeks from the date of death . . . . *If at the expiration of the 500-week period any such wholly or partially dependent person is less than 21 years of age, a hearing referee may order* the employer to continue to pay the weekly compensation or some portion thereof until such wholly or partially dependent person reaches the age of 21. [Emphasis added.]

It is evident from this section that benefits are *not* automatically to be awarded at the end of the

---

of death benefits from sixteen to twenty-one or sixteen to eighteen, as the case may be, it would be entirely consistent with the concept of permissiveness, or an area of discretion, to read the act in its entirety as providing, because of the conclusive presumption of dependency, that the referee has no discretion but to order the continuation of benefits until the dependent is sixteen.

500 weeks, even to a wholly dependent person. Rather, the magistrate has *discretion* to award continuing benefits. In this instance, the Legislature contemplated a situation in which persons may be wholly dependent, yet undeserving of benefits. Under § 321, any claimant seeking continuing benefits following the expiration of the initial 500 weeks must be either wholly or partially dependent and under age twenty-one. If both these criteria are met, the magistrate then has *discretion* to award continuing benefits; such benefits are *not* to be automatically awarded. In other words, while dependency is a necessary prerequisite to continuing benefits, it alone does not guarantee an award of benefits.

Section 335 at the time of Dennis Wainman's death provided yet another illustration of a situation in which the Legislature contemplated that a wholly dependent person may be denied continuing benefits.

Upon the remarriage of a dependent wife receiving compensation, such payments [to the wife] shall cease . . . and further compensation, if any, shall be payable to the person either wholly or partially dependent upon deceased for support at his death as provided in subdivision (b) of section 331. . . . Where, at the expiration of the 500-week period, any such *wholly or partially dependent person* is less than 21 years of age, a hearing referee *may order* the employer to continue to pay the weekly compensation, or some portion thereof, until such wholly or partially dependent person reaches the age of 21. The payment of compensation to any dependent child shall cease when the child reaches the age of 21 years, if at the age of 21 years he is neither physically nor mentally incapacitated from earning, or when the child

reaches the age of 16 years and thereafter is self-supporting for 6 months. [Emphasis added.][3]

Under § 335, as under § 321, a claimant must be both dependent and less than twenty-one years of age[4] in order to be eligible for continuing benefits. After both requirements have been satisfied, a magistrate has *discretion* to award or deny continuing benefits.

It is evident from these sections that the Legislature envisioned situations in which even wholly dependent persons could be denied continuing benefits. While dependency is often the determinative factor, it is clear from these provisions that the Legislature did not deem it to be *necessarily* dispositive. Rather, it viewed dependency as a prerequisite that a claimant must satisfy in order to become eligible for continuing benefits.

In fact, a careful examination of Justice LEVIN's interpretation of §§ 321 and 335 confirms that it advocates a similar position concerning the weight to be accorded a dependency determination. In effect, Justice LEVIN also views dependency as necessary but not sufficient for continuing benefits. This conclusion is best illustrated by Justice LEVIN's discussion of the exceptions articulated in § 341.[5] Justice LEVIN asserts that under § 321 a magistrate deciding whether to order continuing

---

[3] This section has been amended, changing the age criteria from twenty-one and sixteen to eighteen and sixteen, respectively.

[4] Under the amended language of this section, the claimant must be under eighteen years of age. See n 3.

[5] Section 341 stated, in pertinent part:

Question as to who constitutes dependents and the extent of their dependency shall be determined as of the date of the injury to the employee, and their right to any death benefit shall become fixed as of such time, irrespective of any subsequent change in conditions except as otherwise specifically provided in sections 321, 331, and 335.

benefits need only determine if the dependent is under twenty-one;[6] the magistrate need *not* determine dependency because the dependency determination was made at the time of the injury. Since it is clear that the magistrate has discretion to order benefits,[7] Justice LEVIN is essentially acknowledging that dependency is necessary for, but not determinative of, an award of benefits beyond the 500-week period under § 321.

Justice LEVIN's interpretation of § 335 is also in accord with this view. It concludes that § 335 provides *only* for the determination whether a dependent is under eighteen at the end of 500 weeks.[8] If a dependent is under age eighteen, a magistrate *may* order continuing benefits. In light of the fact that the dependency determination has already been made, Justice LEVIN's acknowledgment of the discretionary nature of continuing benefits supports the view that dependency is not necessarily sufficient to merit an award of continuing benefits.[9]

---

[6] *Post* at 121-122.

[7] Assuming, of course, that the dependent is under age twenty-one.

[8] *Post* at 123-124.

[9] I note, however, that § 335 contained language that arguably supports a contrary position. In particular, § 335 stated:

> The payment of compensation to any dependent child shall cease when the child reaches the age of 18 years, if at the age of 18 years he or she is neither physically nor mentally incapacitated from earning, or when the child reaches the age of 16 years and thereafter is self-supporting for 6 months. *If the child ceases to be self-supporting thereafter, the dependency shall be reinstated.* [Emphasis added.]

By stating that the "dependency" must be reinstated, it *could* be inferred from the statute that dependency is synonymous with compensation. This, however, does not comport with the interpretation advanced above in which dependency is a prerequisite to, but not a guarantee of, compensation. Two comments should serve to dispel any discomfort brought about by the language emphasized above.

First, the emphasized sentence could be read in a manner consis-

These examples are indicative of a potential inconsistency in Justice LEVIN's position. Justice LEVIN asserts that dependency is both necessary *and sufficient* for an award of continuing benefits to *persons under age sixteen,* but that dependency, though necessary, *is not necessarily sufficient* for an award of continuing benefits *to dependents over sixteen.* The question thus becomes whether there is textual support for this dichotomy of interpretation.

Because the sole distinction under the relevant statutes between these two groups is the conclusive presumption of dependency applicable to those under age sixteen, I begin by examining the conclusive presumption of dependency. At the time of Dennis Wainman's death, § 331 stated, in pertinent part,

> (1) The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee:
>
>    *   *   *
>
> (b) A child under the age of 16 years, or over 16 years of age if physically or mentally incapacitated from earning upon the parent with whom he or she is living at the time of the death of such parent. . . . In all other cases questions of dependency, in whole or in part, shall be determined in accordance with the fact, as the fact may be at the time of the injury . . . . [MCL 418.331; MSA 17.237(331).]

tent with the interpretation advanced above—that the dependency is reinstated and, hence, the dependent once again becomes *eligible* for continuing benefits. Under this interpretation, a child who ceases to be self-supporting once again becomes eligible for benefits.

Second, I have noted that the Legislature did not use "dependency" and "benefits" interchangeably in § 341, which suggests that the Legislature did not intend "dependency" to be the equivalent of "benefits." Any inference to that effect appears contrary to the legislative intent.

It must be determined whether the effect of being "conclusively presumed to be wholly dependent" differs from the effects of a factual determination of dependency. Put another way, does the conclusive nature of the presumption of dependency transform the discretionary aspect of the magistrate's decision to award continuing benefits under §§ 321 and 335 into a compulsory obligation to award such benefits? I believe it does not.

I would conclude that this statutory provision neither supports nor compels the conclusion that claimants conclusively presumed to be dependent are also automatically entitled to an award of continuing benefits. Rather, this provision simply states that children under the age of sixteen are conclusively presumed to be wholly dependent on the deceased employee with whom they are living at the time of death. The effect of this conclusive presumption is to preclude a defendant-employer from presenting evidence on the issue of dependency; it cannot attempt to establish that the dependent is in fact self-supporting. This conclusive presumption, however, does *not* prohibit the employer from presenting evidence regarding the diminished need for such benefits on the part of the dependent's parents or guardians. It is this distinction that allows the conclusive presumption of dependency and the discretionary nature of continuing benefits to be reconciled.

Accordingly, I would hold that there is a conclusive presumption of dependency until age sixteen, but that despite the existence of this presumption, benefits are not automatically continued until age sixteen; rather, continuing benefits may be awarded at the discretion of the magistrate.[10]

---

[10] One may wonder what benefit the dependent derives from the conclusive presumption of dependency, given that it does not guarantee the continuation of benefits. In short, this presumption relieves

I would vacate the decision of the Court of Appeals and remand the case to the WCAC for further proceedings consistent with this opinion.

GRIFFIN, J., concurred with BRICKLEY, J.

LEVIN, J. (*separate opinion*). The worker's compensation act provides that a referee "may order" an employer to continue tʊ pay death benefits beyond the expiration of the 500-week period to a dependent who is under eighteen (if any dependent wife of the deceased worker has remarried, § 335)[1]

the dependent from having to make a showing of factual dependency, *and* it relieves that dependent's parents or guardians from having to show a financial need for such benefits, at least until such time as the defendant-employer has produced sufficient evidence to establish that the dependent's parents are no longer in need of continuing benefits. Does this interpretation in effect abolish the conclusive presumption of dependency? I think not, if one distinguishes between the child's ability to support himself and the parents' ability to support the dependent. The former involves the question of dependency; the latter entails a determination of the dependent's parents' financial need. It seems that the compensation scheme was designed to pay benefits to those persons who were both dependent *and* whose parents' financial condition evinced a need for such benefits. Under the interpretation advanced above, anytime an employer contests the continuation of benefits, a magistrate would engage in a two-pronged inquiry. First, is the child dependent? Second, do the child's parents need financial help? If both of these inquiries are answered in the affirmative, the magistrate should award continuing benefits consistent with his discretion.

[1] Section 335 of the Worker's Disability Compensation Act (1969 PA 317), in effect at the time of Dennis Wainman's death, provided:

Upon the remarriage of a dependent wife receiving compensation, such payments shall cease upon the payment to her of the balance of the compensation to which she would otherwise have been entitled but in no event to exceed the sum of $500.00, and further compensation, if any, shall be payable to the person either wholly or partially dependent upon deceased for support at his death as provided in subdivision (b) of section 331. A hearing referee shall determine the amount of compensation or portion thereof that shall be payable weekly to such wholly or partially dependent person for the remaining weeks of compensation. *Where, at the expiration of the 500-week period, any such wholly or partially dependent person is less than 21 years of age, a hearing referee may order the employer*

or under twenty-one years of age (if a dependent
wife has not remarried, § 321).[2]

> *to continue to pay the weekly compensation, or some portion
> thereof, until such wholly or partially dependent person
> reaches the age of 21.* The payment of compensation to any
> dependent child shall cease when the child reaches the age of
> 21 years, if at the age of 21 years he is neither physically nor
> mentally incapacitated from earning, or when the child reaches
> the age of 16 years and thereafter is self-supporting for 6
> months. If such status ceases, the dependency shall be re-
> instated. Such remaining compensation, if any, shall be payable
> to the person either wholly or partially dependent upon the
> deceased for support at the time of his death, as provided in the
> case of the remarriage of a dependent wife. [MCL 418.335; MSA
> 17.237(335). Emphasis added.]

Section 335 was amended by 1985 PA 103 to change to eighteen
from twenty-one the age to which a referee may order the employer
to continue to pay compensation to a dependent who, at the expira-
tion of the 500-week period, was less than twenty-one. The 1985
amendment renumbered § 335 to constitute the language of § 335
quoted above as subsection (1) and the following as subsection (2):

> This section shall apply to all persons who are entitled to
> receive compensation or are receiving compensation under this
> act on the effective date of this subsection and who have not
> attained the age of 18 years on the effective date of this
> subsection.

The 1985 act did not amend § 321 (see n 2 for text) to reduce the
age to eighteen. The WCAC, *Taylor v Chrysler Corp,* 91-0286, leave
denied by the Court of Appeals and this Court, 445 Mich 938 (1994),
has ruled that § 321 therefore continues to provide that the referee
may order the employer *to continue to pay compensation to a depen-
dent who,* at the expiration of the 500-week period, is less than
twenty-one.

[2] Section 321 of the Worker's Disability Compensation Act (1969 PA
317), in effect at the time of Dennis Wainman's death, provided the
following death benefit:

> If death results from the injury, the employer shall pay, or
> cause to be paid, subject, however, to the provisions of section
> 375, in 1 of the methods hereinafter provided, to the depen-
> dents of the employee, wholly dependent upon his earnings for
> support at the time of the injury, a weekly payment equal to
> 2/3 of his average weekly wages *for a period of 500 weeks from
> the date of death,* but not more than $64.00 for 1 dependent;
> $69.00 for 2 dependents . . . . *If at the expiration of the 500-
> week period any such wholly or partially dependent person is
> less than 21 years of age, a hearing referee may order the*

In the instant case, the deceased worker's dependent wife remarried,[3] and the parties appear to agree that the children of the deceased worker are not entitled to benefits after they are eighteen.[4]

The question presented is whether a referee may order that the payment of benefits be continued for children who were dependent on their father at the time he was killed although the mother remarried after the father was killed, her new husband thereafter adopted the children, and it has not been shown that the children continued to be factually dependent on their deceased father.

We would hold that a referee may order the continued payment of benefits to the children, reverse the Court of Appeals, and affirm the order of the WCAB which affirmed an award to the children although they were adopted by the man she married after her husband's death.

I

Following the remarriage of the deceased worker's widow, Michigan Bell continued to pay benefits voluntarily for the two children until the expiration, on September 12, 1981, of the 500-week period. Michigan Bell then ceased to pay benefits for the two children.

The children's mother, plaintiff Candace Mur-

employer to continue to pay the weekly compensation or some portion thereof until such wholly or partially dependent person reaches the age of 21. [MCL 418.321; MSA 17.237(321). Emphasis added.]

[3] Plaintiff Candace Murphy is the widow of Dennis Wainman, a Michigan Bell Telephone Company employee, who was killed while driving a Michigan Bell truck in February, 1972. Wainman's widow remarried in June, 1973.

[4] The 500 weeks expired on September 12, 1981, before the effective date of the 1985 amendments.

Neither Kelly nor Sean had reached eighteen by 1985.

phy, filed a petition for a hearing of her claim that the children were entitled to benefits beyond the 500-week period.

Still another section of the act provides that a child under the age of sixteen is conclusively presumed to be dependent for support on the deceased worker.[5] Kelly was thirteen and Sean

---

[5] Section 331 of the Worker's Disability Compensation Act (1969 PA 317), in effect at the time of Dennis Wainman's death, provided concerning dependency for purposes of death benefits:

> (1) *The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee:*
>
> * * *
>
> (b) *A child under the age of 16 years* . . . . [MCL 418.331; MSA 17.237(331). Emphasis added.]

Section 353 of the Worker's Disability Compensation Act (1969 PA 317, as amended by 1971 PA 215), in effect at the time of Dennis Wainman's death, similarly provided concerning dependency for purposes of benefits for total incapacity and partial incapacity:

> (1) For the purposes of sections 351 to 361, dependency shall be determined as follows:
>
> (a) *The following shall be conclusively presumed to be dependent for support upon an injured employee:*
>
> * * *
>
> (ii) *A child under the age of 16 years* . . . .
>
> * * *
>
> (2) Weekly payments to an injured employee shall be reduced by the additional amount provided for any dependent child or spouse or other dependent when such child either reaches the age of 18 years or after becoming 16 ceases for a period of 6 months to receive more than 1/2 of his support from such injured employee, if at such time he is neither physically nor mentally incapacitated from earning, or when such spouse shall be divorced by final decree from his injured spouse, or when such child, spouse or other dependent shall be deceased.
>
> (3) An increase in payments shall be made for increased numbers of conclusive dependents as defined in this act not so dependent at the time of the injury of an employee. [MCL 418.353; MSA 17.237(353). Emphasis added.]

Section 351 (MCL 418.351; MSA 17.237[351]) provides for the payment of benefits while the incapacity for work is "total," and § 361

nine years old when the 500-week period ended on September 12, 1981.

Michigan Bell countered that, although the children were under sixteen when the 500-week period ended, they were no longer dependent on their deceased father because their mother's new husband, Charles Murphy, had adopted them and there was no factual showing that the children continued to be dependent on their deceased father.

II

The hearing referee ordered the continuation of benefits for the children until they were sixteen. The WCAB affirmed. The Court of Appeals remanded for clarification, and the WCAB ruled on remand that Michigan Bell was actually obligated to continue paying benefits until the children were eighteen. The Court of Appeals reversed,[6] citing this Court's decision in *Theodore v Packing Materials, Inc,* 396 Mich 152; 240 NW2d 255 (1976).

A

The Court of Appeals said that "it is clear from the context" of the sections of the act providing that a "referee *may* order" the continuation of the payment of compensation beyond the 500-week death benefit period for a dependent until such person reaches the age of twenty-one, or in the case of remarriage of the worker's dependent widow, until such person reaches the age of eighteen, "that the basis for the permissive ordering of

(MCL 418.361; MSA 17.237[361]) provides for the payment of benefits while the incapacity for work is "partial."

[6] 200 Mich App 422; 505 NW2d 3 (1993).

continued weekly benefits is the recipient's continued dependency."[7]

The Court of Appeals construed the act as providing that after the 500-week period, the referee "could order defendant to continue to pay compensation benefits only if Sean and Kelly were actually dependent upon their deceased natural father."[8] The Court read *Theodore* as providing that after a child is adopted, he ceases to be "factually dependent on"[9] his deceased father. The Court also concluded, on the basis of the reasoning in *Theodore*, that the adoption "destroyed the rationale for the conclusive presumption of the children's dependency upon their deceased father . . . ."[10] The Court continued that the adoption "created a legal relationship in which [Charles Murphy] assumed the legal obligation to provide for the children and supplanted the legal relationship formerly giving rise to the conclusive presumption of the children's dependency upon Dennis Wainman, their deceased natural father."[11]

---

[7] 200 Mich App 430.

The Court restated its conclusion:

> Clearly, payment of compensation benefits after the five-hundred-week benefit period is based on whether a child is factually dependent. Thus, the conclusive presumption of § 331(b) that a child under the age of sixteen years is wholly dependent for support upon a deceased employee with whom the child is living at the time of the death of the employee parent does not require an employer to pay compensation benefits under § 321 or § 335 after the expiration of the five-hundred-week benefit period. [*Id.,* p 430.]

See n 2 for the text of § 321, n 1 for the text of § 335, and n 5 for the text of § 331(1)(b).

[8] 200 Mich App 431.

[9] *Id.*

[10] *Id.,* p 432.

[11] *Id.,* pp 432-433.

B

In *Theodore,* the children were adopted by the mother's second husband before he was injured and died. The observations of the Court in *Theodore* should be read in light of the factual situation there presented. The deceased worker died after his children had been adopted by another man.

*Theodore* does not control decision in the instant case.

C

We also disagree with the conclusion of the Court of Appeals that because the pertinent sections of the act provide that the "referee *may* order" the continuation beyond 500 weeks of the payment of death benefits to dependents who are under twenty-one or eighteen, "that the basis for the permissive ordering of continued weekly benefits is the recipient's continued dependency" determined as a factual matter as of the conclusion of the 500-week period.[12]

III·

A section of the Worker's Disability Compensation Act specifically provides that a child under the age of sixteen years "shall be conclusively presumed to be wholly dependent for support upon

---

[12] The Court did not explicitly say "at the conclusion of the 500-week period," but that is implicit in its conclusion that the adoption of the children by Charles Murphy after their father's death supersedes the conclusive presumption of dependency of a child under the age of sixteen (see n 5), and the provision of the act that dependency shall be determined as of the date of death, and the right to a death benefit shall become " 'fixed as of such time, irrespective of any subsequent change in conditions . . . .' " See n 14 and accompanying text.

a deceased employee."[13] Merely because the provisions of the act for the continuation of death benefits beyond 500 weeks to underage dependents are stated in permissive terms—"the referee *may* order"—it does not follow that the conclusive presumption of dependency does not continue until the dependent reaches the age of sixteen.

Even if the permissive "the referee *may* order" means that the referee is not obliged to order the continuation of payment of death benefits from sixteen to twenty-one or sixteen to eighteen, as the case may be, it would be entirely consistent with the concept of permissiveness, or an area of discretion, to read the act in its entirety as providing, because of the conclusive presumption of dependency, that the referee has no discretion but to order the continuation of benefits until the dependent is sixteen.

### IV

Nor do we read the permissive form—"the referee *may* order"—as negating the specific provision in another section of the act that "[q]uestions as to who constitutes dependents and the extent of their dependency *shall be determined as of the date of the injury to the employee, and their right to any death benefit shall become fixed as of such time, irrespective of any subsequent change in conditions except as otherwise specifically provided in sections 321, 331 and 335.*"[14] (Emphasis added.)

---

[13] See n 5 for text of § 331 in effect at the time of Dennis Wainman's death.

[14] Section 341 of the Worker's Disability Compensation Act of 1969 (1969 PA 317) in effect at the time of Dennis Wainman's death provided:

Questions as to who constitutes dependents and the extent of their dependency shall be determined as of the date of the

The three sections, 321, 331, and 335, adverted to in § 341 do not "otherwise specifically provide" and thus the "except as otherwise specifically provided" language of § 341 does not support the view that the question whether the death benefit should be continued beyond 500 weeks for an underage dependent should be based on a finding of factual dependency as of the expiration of the 500-week period, or at some other time or times before the child reaches twenty-one or eighteen, as the case may be.

A

The first exception, "except as otherwise provided in section" 321,[15] concerns the section of the act that spells out the 500-week limitation on death benefits. That section also specifically provides that "[i]f at the expiration of the 500-week period any such" dependent person is less than twenty-one, the "referee *may* order" the employer to continue to pay benefits after the expiration of

injury to the employee, and their right to any death benefit shall become fixed as of such time, irrespective of any subsequent change in conditions except as otherwise specifically provided in sections 321, 331 and 335. The death benefit shall be directly recoverable by and payable to the dependents entitled thereto, or their legal guardians or trustees. In case of the death of a dependent, his proportion of the compensation shall be payable to the surviving dependents pro rata. Upon the death of all dependents compensation shall cease. No person shall be excluded as a dependent who is a nonresident alien. No dependent of an injured employee shall be deemed, during the life of such employee, a party in interest to any proceeding by him for the enforcement of collection of any claim for compensation, nor as respects the compromise thereof by such employee. [MCL 418.341; MSA 17.237(341).]

Section 331 reiterates the concept set forth in § 341 by stating that questions of dependency for persons not conclusively presumed to be dependent "shall be *determined in accordance with the fact, as the* fact may be *at the time of the injury.*"

[15] See n 5 for text.

the 500-week period to a dependent child until age twenty-one.[16]

The "at the expiration of the 500-week period" language of § 321, like the "at the expiration of the 500-week period" language in § 335, provides only for the determination as of the expiration of the 500-week period whether the dependent is less than twenty-one. Neither that language nor the "referee *may* order" language of § 321 "otherwise specifically provides" that the questions whether an underage child is dependent shall not be "determined as of the date of injury" of the employee.

Nor does § 321 "otherwise specifically provide" that the "*right* to any death benefit shall" not "become fixed" as of the date of injury.

Nor does § 321 "otherwise specifically provide" that a "subsequent change in conditions" shall be taken into consideration in deciding whether the "referee *may* order" a continuation of the payment of death benefits pursuant to the "right to any death benefit" that became "fixed" as of the date of injury.

Our colleagues do not contend that § 321 "otherwise *specifically* provides."

B

The second exception, "except as otherwise specifically provided" in § 331,[17] concerns the section of the act that states that a child under the age of sixteen is conclusively presumed to be wholly dependent for support on the deceased employee. This section thus specifically sets forth a conclu-

---

[16] As set forth in n 1, the 1985 amendment did not amend § 321 to change the age from twenty-one to eighteen.

[17] See n 5 for text.

sive presumption that a child under sixteen is dependent on the deceased.[18]

Even if the referee is not obliged, because of "the referee *may* order" language, to order the continuation of payment of death benefits from sixteen to twenty-one or sixteen to eighteen, as the case may be, we conclude, because of the conclusive presumption of dependency until sixteen, that the referee has no discretion but to order the continuation of benefits until the dependent is sixteen.

Our colleagues do not contend that § 331 "otherwise *specifically* provides."

C

The third exception, "except as otherwise specifically provided" in § 335,[19] concerns the section of the act respecting remarriage of a dependent wife. That section also specifically provides that "[w]here, at the expiration of the 500-week period, any such" dependent is less than twenty-one or, as a result of the 1985 amendment, eighteen, the "referee *may* order" the employer to continue to pay benefits after the expiration of the 500-week period to a dependent child until age twenty-one or eighteen.

The "at the expiration of the 500-week period" language of § 335, like the "at the expiration of the 500-week period" of § 321, provides only for the determination as of the expiration of the 500-week period whether the dependent is less than

---

[18] This section also restates the concept that questions concerning who constitutes a dependent shall be determined as of the date of injury and that the right to a death benefit shall then become fixed irrespective of any subsequent change in condition, in the following language: questions of dependency "shall be determined in accordance with the fact, as the fact may be at the time of the injury" (see n 5).

[19] See n 1 for text.

eighteen. Neither that language nor the "referee
*may* order" language of § 335 "otherwise specifi-
cally provides" that the question whether an un-
derage child is dependent shall not be "determined
as of the date of injury" to the employee.

Nor does § 335 "otherwise specifically provide"
that the "right to any death benefit shall" not
"become fixed as of" the date of injury. Nor does
§ 335 "otherwise specifically provide" that a "sub-
sequent change in conditions" shall be taken into
consideration in deciding whether the "referee
*may* order" a continuation of the payment of
death benefits.

The "referee *may* order" language does not itself
"otherwise specifically provide" whether the deter-
mination is to be made as of the date of injury or
as of the expiration of the 500-week period or
periodically thereafter.

Our colleagues do not contend that § 335 "other-
wise *specifically* provides."

**D**

We conclude that because

- § 341 provides that "[q]uestions as to who
  constitutes dependents and the extent of
  their dependency shall be determined as of
  the date of the injury to the employee, *and
  their right to any death benefit shall be-
  come fixed as of such time, irrespective of
  any subsequent change in conditions* except
  as otherwise specifically provided in sections
  321, 331 and 335" (emphasis added); and
- neither § 321, 331 or 335, nor the "referee
  *may* order" language of §§ 321 and 335
  otherwise *specifically* provides,

that the questions in the instant case concerning the "extent of the children's dependency" are required by § 341 to be determined as of the date of injury of their father, and

- "their right to *any* death benefit" became "fixed as of" the date of his death, "irrespective of any subsequent change in conditions,"
- including their adoption by Charles Murphy, and without regard to whether after they were adopted they continued to be factually dependent on their deceased father.

### E

We are reinforced in this conclusion by the 1985 amendment of § 335, concerning the remarriage of a dependent wife, providing that the payment of compensation *to* a dependent child shall cease "*when* the child reaches the age of 16 years and thereafter is self-supporting for 6 months. If the child ceases to be self-supporting thereafter, the dependency shall be reinstated."[20]

That language suggests that earnings by a dependent child before sixteen would not be material even though, factually, the child was no longer dependent.

That language concerning earnings by a child after he or she is sixteen is the kind of "otherwise

---

[20] The payment of compensation to any dependent child shall cease when the child reaches the age of 18 years, if at the age of 18 years he or she is neither physically nor mentally incapacitated from earning, or when the child reaches the age of 16 years and thereafter is self-supporting for 6 months. If the child ceases to be self-supporting thereafter, the dependency shall be reinstated. [MCL 418.335; MSA 17.237(335) as amended by 1985 PA 103.]

specifically provided" language that the Legisla-
ture had in mind in providing that who constitutes
dependents, and the extent of their dependency,
shall be determined as of the date of injury, and
the right to any death benefit shall become fixed
as of such time, irrespective of any subsequent
change in condition except as otherwise specifi-
cally provided in §§ 321, 331 and 335.

Section 335 "otherwise specifically provides,"
with respect to a child who is sixteen and one-half
years or older, that payment of compensation shall
cease if he has been self-supporting for six months.

The specific provision for the case in which the
dependent child earns compensation after the age
of sixteen indicates that absent such circumstances
the question whether the child is a dependent is to
be determined by the referee as of the date of
injury/death without regard to, as § 341 provides,
"any subsequent change in conditions."

V

In the instant case, the referee and the WCAB
exercised whatever discretion they may have un-
der "the referee *may* order" language by directing
that the death benefits be continued until the
children reach eighteen.

Michigan Bell cites no case[21] in which the WCAB,
the WCAC or the Court of Appeals held that the
factual dependency of the children is to be deter-
mined as of the conclusion of the 500-week period
in light of the circumstances then obtaining.

[21] We would resolve any doubts in favor of the WCAB/WCAC construc-
tion of the law and exercise of discretion until it is shown by a
ligitant, who asserts that they erred, that what was ordered in this
case is inconsistent with the practice as reflected in earlier decisions
of the WCAB or the WCAC.

VI

It does not follow from a decision that "may order" means that there is an element of discretion, that on remand the magistrate should consider the financial circumstances of the adoptive father in deciding the "need" of the child for an award of continued compensation.

Candace Murphy, the children's mother, was legally obligated to support them before and after they were adopted by Charles Murphy.

I question whether the Legislature intended that a widow, often required to return to the work force to support herself, and to supplement the worker's compensation benefit for herself and her children, be obliged to provide the amount that otherwise would be paid by the employer as continuing compensation under the "may order" language.

Another reading of "may order," assuming that it is a directive to decide the question of continuing benefits in accordance with the facts as the facts may be at the conclusion of the 500-week period rather than as of the date of injury, is that the magistrate should consider the financial condition of the child without regard to monies provided by others who have supplemented the worker's compensation benefit—the mother, grandparents, live-in boyfriend, husband, brothers and sisters of the deceased parent or widow, and an adoptive father.

The magistrate might look at social security disability benefits,[22] payments under an ERISA plan, the child's stash of war bonds, any scholarship money, and the child's earnings.

The view that the inquiry is limited to the child's financial condition as of the conclusion of

[22] 70A Am Jur 2d, Social Security and Medicare, § 362, p 317.

the 500-week period, without regard to monies
that others have voluntarily contributed or are
legally, as in the case of the mother or an adoptive
father, obliged to provide, eliminates the adventi-
tious circumstances of the mother's ability to pro-
vide, the generosity of family members, whether
she returned to the work force, remarried, and
whether, if she has remarried, her new husband
adopted the children, and his financial circum-
stances.

It is one thing to say that the employer shall not
be required to continue to pay benefits if the
child's *personal* financial circumstances have im-
proved to the point where he no longer needs
benefits, and quite another to look to those "le-
gally" obligated to provide support to substitute
for the employer.

A child of a deceased worker-father would gener-
ally have been dependent on the deceased father
for support. The deceased father would generally
have continued to support the child until the child
was eighteen if the father had not died in a work-
related accident. The "may order" language
authorizes the referee or magistrate to require the
employer to continue to provide benefits in the
shoes of the deceased father after the 500 weeks
unless the child has other personal income or has
become self-supporting.

We question whether the Legislature intended
that a mother who may have returned to the work
force only because her husband died, or a man
who marries her and additionally steps into the
shoes of the deceased worker as the adoptive fa-
ther of the children, be required to relieve the
employer of the obligation to pay continued bene-
fits beyond the 500 weeks until the child is eigh-
teen. Continued benefits until the child is eighteen
is additional compensation for the money the child

would probably have received from the deceased father until he was eighteen or had become self-supporting, had the father not lost his life in a work-related accident.

From an administrative point of view, we question whether worker's compensation magistrates have the experience to decide or generally make the kind of decisions that would be required if they are henceforth to decide whether the mother's income or an adoptive father's income is sufficient, having in mind other support needs for themselves and other children, to relieve the employer of the obligation to provide continuing benefits.[23]

It is again noteworthy that the Legislature provided that the child's right to benefits terminates when the child becomes self-supporting for six months after he is sixteen. The Legislature thus stated one event, and only one event, that would relieve the employer of the obligation to provide continuing benefits. The focus was on the child's income not on the income of the mother or of her new husband or of an adoptive father.

Vacated and remanded to the WCAC.

CAVANAGH, C.J., and MALLETT, J., concurred with LEVIN, J.

---

[23] Is the magistrate going to decide the standard of living, whether the family should take a vacation, live in a smaller house, drive a smaller car, etc.?