HATHAWAY, J.
(dissenting). I dissent from the majority’s decision in this matter because the majority allows unconstitutional limitations on retirement-based income-tax deductions to remain in place and engages in policymaking decisions that should properly be left to the Legislature and the Governor. The majority not only fails to strike down provisions of 2011 PA 38[1] that are clearly unconstitutional, but also redrafts a section of this act to provide tax deductions and exemptions that the Legislature clearly did not intend. I would hold that the restrictions on the deductions of retirement income, as well as the income-based restrictions on personal exemptions, enacted by 2011 PA 38 are unconstitutional. The restrictions on deductions of retirement benefits contained in § 30(9) of the Income Tax Act, MCL 206.30(9), as amended by 2011 PA 38, clearly violate article 9, § 24; article 1, § 10; and article 9, § 7 of Michigan’s Constitution. The income-based restrictions on personal exemptions contained in § 30(7) of that act, as amended by 2011 PA 38, clearly violate article 9, § 7 of the Michigan Constitution. Moreover, I would follow the established rules of statutory construction and refrain from judicially creating tax deductions and exemptions for individuals earning more than $75,000 annually and couples earning more than $150,000 annually, which the Legislature clearly did not intend.[2] I *364 would leave to the Legislature the important role of deciding the best tax policy for the citizens of this state and limit the judiciary to its proper role of reviewing statutes to determine whether they are in accordance with our Constitution. Because the majority usurps this important legislative function in its decision today, I dissent.
I. ANALYSIS
On May 25, 2011, the Governor of Michigan signed 2011 PA 38 into law. Among the various changes to the tax code enacted in 2011 PA 38 is a sliding scale for limitations on deductions of retirement income based on age and income level. The act also imposes a sliding scale for limitations on income exemptions based on income level. Opponents of the act argue that these changes violate the United States and Michigan Constitutions, while supporters of the act contend that its provisions are consistent with the Legislature’s power to tax.
On May 31, 2011, the Governor asked this Court to render an advisory opinion on issues pertaining to whether certain provisions of 2011 PA 38 are constitutional.[3] The specific inquiries raised by the Governor *365 were (1) whether reducing or ehminating the statutory exemption for public-pension incomes as described in MCL 206.30, as amended, impairs accrued financial benefits of a “pension plan [or] retirement system of the state [or] its political subdivisions” under Const 1963, art 9, § 24; (2) whether reducing or eliminating the statutory tax exemption for pension incomes as described in MCL 206.30, as amended, impairs a contractual obligation in violation of Const 1963, art 1, § 10 or US Const, art I, § 10(1); (3) whether determining eligibility for income-tax exemptions on the basis of total household resources, or age and total household resources as described in MCL 206.30(7) and (9), as amended, creates a graduated income tax in violation of Const 1963, art 9, § 7; and (4) whether determining eligibility for income-tax exemptions on the basis of date of birth as described in MCL 206.30(9), as amended, violates equal protection of the law under Const 1963, art 1, § 2 or the Fourteenth Amendment of the United States Constitution.[4]
This Court agreed to hear oral argument on the Governor’s questions and requested that the Attorney General provide briefing in support of and in opposition to the constitutionality of the statutory sections at issue. In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38, 489 Mich 954 (2011).
A. MCL 206.30(9) VIOLATES ARTICLE 9, § 24 OF THE MICHIGAN CONSTITUTION
The first issue is whether reducing or eliminating the statutory deduction for public-pension income as de *366 scribed in MCL 206.30 impairs accrued financial benefits of a “pension plan [or] retirement system of the state [or] its political subdivisions” under Const 1963, art 9, § 24. I conclude that it clearly does.
The starting point for this analysis is the language of article 9, § 24, which protects accrued retirement benefits of public employees.[5] Const 1963, art 9, § 24 provides, in part: “The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.” Pursuant to this constitutional provision, accrued financial benefits of public-pension and retirement systems shall not be diminished or impaired. This constitutional provision was ratified by the citizens of the state of Michigan and represents the will of the voters. Article 9, § 24 is not discretionary; it is a mandatory provision of our state Constitution that the Legislature is bound to follow. Moreover, the judiciary is bound to abide by this provision in determining whether a legislative enactment withstands constitutional scrutiny.
Before the enactment of the current version of MCL 206.30,[6] the prior version of MCL *367 206.30(1)(f)(i)[7] unequivocally provided that public pensions are not subject to state income tax. At issue is whether MCL 206.30(9), which now abrogates the protection of public-pension benefits for individuals born in or after 1946[8] and imposes a tax on payments of public-pension benefits, is consistent with the Constitution. Subsection (9) provides:
*368 In determining taxable income under this section, the following limitations and restrictions apply:
(a) For a person born before 1946, this subsection provides no additional restrictions or limitations under [MCL 206.30(1)(f)].
(b) For a person born in 1946 through 1952, the sum of the deductions under [MCL 206.30(1)(f)(i), (ii), and iv)] is limited to $20,000.00 for a single return and $40,000.00 for a joint return. After that person reaches the age of 67, the deductions under [MCL 206.30(1)(f)(i), (ii), and (iv)] do not apply and that person is eligible for a deduction of $20,000.00 for a single return and $40,000.00 for a joint return, which deduction is available against all types of income and is not restricted to income from retirement or pension benefits. However if that person’s total household resources exceed $75,000.00 for a single return or $150,000.00 for a joint return, that person is not eligible for a deduction of $20,000.00 for a single return and $40,000.00 for a joint return. A person that takes the deduction under [MCL 206.30(1)(e)] is not eligible for the unrestricted deduction of $20,000.00 for a single return and $40,000.00 for a joint return under this subdivision.
(c) For a person born after 1952, the deduction under [MCL 206.30(1)(f)(i), (ii), or (iv)] does not apply. When that person reaches the age of 67, that person is eligible for a deduction of $20,000.00 for a single return and $40,000.00 for a joint return, which deduction is available against all types of income and is not restricted to income from retirement or pension benefits. If a person takes the deduction of $20,000.00 for a single return and $40,000.00 for a joint return, that person shall not take the deduction under [MCL 206.30(1)(f)(iii)] and shall not take the personal exemption under [MCL 206.30(2)]. That person may elect not to take the deduction of $20,000.00 for a single return and $40,000.00 for a joint return and elect to take the deduction under [MCL 206.30(1)(f)(iii)] and the personal exemption under [MCL 206.30(2)] if that election would reduce that person’s tax liability. However, if that person’s total household resources exceed $75,000.00 for a single return or $150,000.00 for a joint return, that person *369 is not eligible for a deduction of $20,000.00 for a single return and $40,000.00 for a joint return. A person that takes the deduction under [MCL 206.30(1)(e)] is not eligible for the unrestricted deduction of $20,000.00 for a single return and $40,000.00 for a joint return under this subdivision.
(d) For a joint return, the limitations and restrictions in this subsection shall be applied based on the age of the older spouse filing the joint return. [MCL 206.30(9).]
In reviewing this statute, we must examine the language of the statute itself, and the effect or impact of this new tax on the benefits received by public employees born in or after 1946, to determine whether “accrued financial benefits” are “impaired or diminished.” This statute, without question, imposes a new tax on public-employee pensions that did not previously exist. It does so by restricting and limiting the pension and retirement deductions set forth in MCL 206.30(1)(f) on the basis of age and income level. These restrictions and limitations create various degrees of tax liability.
It is undisputed that public-employee pensions and retirement plans are an “accrued financial benefit” for purposes of article 9, § 24. As stated in Studier v Mich Pub Sch Employees’ Retirement Bd, 472 Mich 642, 654; 698 NW2d 350 (2005), “the ratifiers of our Constitution would have commonly understood ‘accrued’ benefits to be benefits of the type that increase or grow over time — such as a pension payment or retirement allowance that increases in amount along with the number of years of service [an] employee has completed.” Accordingly, MCL 206.30(9) clearly implicates an accrued financial benefit. The inquiry then becomes whether that accrued financial benefit is diminished or impaired by the imposition of a state tax directly on that pension.
In analyzing this issue, the effect or impact the provision will have on public pensions cannot be ig *370 nored. MCL 206.30(9) has no impact on public pensions for those persons born before 1946. However, all persons entitled to receive public pensions born in or after 1946 will be directly impacted. These public employees with vested pensions will have their benefits reduced. This is a direct financial impact. For example, before the enactment of MCL 206.30(9), a retiree born after 1952 who earned annual public-pension benefits of $20,000 would receive the full $20,000 annually. Under MCL 206.30(9), however, that retiree’s $20,000 pension is no longer deductible. That $20,000 is subject to the state’s 4.35 percent income tax rate, which results in an $875 reduction in the total amount of money that the retiree will receive annually. This is a direct tax on a public pension that will in most instances be deducted directly from the pension benefit at the time of distribution. This results in a financial reduction in the benefit to the pension recipient. A financial reduction of a benefit is a diminishment or impairment under any definition.[9] Thus, a direct tax on public pensions contravenes the constitutional prohibition contained in article 9, § 24. Specifically, by diminishing the vested pension and retirement benefits of public employees, MCL 206.30(9) violates the constitutional mandate that such benefits “shall not be diminished.”[10]
*371 The majority opines that MCL 206.30(9) only reduces or eliminates tax deductions based on retirement and pension benefits and does not directly reduce the benefits themselves. The majority reasons that “tax deductions” do not amount to an accrued financial benefit and, therefore, the deductions do not fall within the purview of article 9, § 24.1 find the majority’s reasoning unpersuasive and erroneous because it creates an unnecessary distinction. Simply stated, a tax is a tax, whether it comes in the form of a direct tax increase or the elimination of a deduction. The elimination of this tax deduction results in a new tax, which is directly imposed on vested pensions. The pension benefits are irrefutably “accrued financial benefits.” The majority disregards this. The majority also disregards the fact that the payout of pension benefits is reduced. But the impact remains the same: pension benefits, which are accrued financial benefits, will be diminished or impaired because they will be directly reduced by this tax. As former Attorney General Frank Kelley correctly stated in an opinion of the Attorney General:
[T]here is little question that an exemption from taxation for pension benefits constitutes “financial benefits” within the meaning of Const 1963, art 9, § 24, since the exemption usually will result in greater net pension payments for the recipient. In Robert Tilove’s treatise, Public Employee Pension Funds (1976), cited with approval by Justice Williams for the unanimous Court in Kosa v State Treasurer, 408 Mich 356, 372 n 22; see also pp 372-373; 292 NW2d 452 (1980), the author, Tilove, in referring to public pension income tax exemptions generally, states: “[a]n income tax exemption has precisely the same effect as a benefit.” (At p 244.) [OAG, 1991-1992, No 6697, p 119 (December 18, 1991).]
*372 The public-pension tax exemptions themselves have become part of the accrued financial benefits for vested employees, and reducing or eliminating them violates the Constitution.[11] Therefore, under article 9, § 24, the Legislature cannot circumvent the prohibition against reducing accrued financial benefits by reducing or eliminating tax deductions unless it replaces the loss of benefits caused by the reduction or elimination of the deductions. The result of cutting the deduction for benefits is the same as directly cutting the benefits themselves, and it is unconstitutional. The Legislature cannot do indirectly what the Constitution directly prohibits.
B. MCL 206.30(9) VIOLATES ARTICLE 1, § 10 OF MICHIGAN’S CONSTITUTION
The next issue is whether reducing or eliminating the statutory deduction for vested public-pension income as described in MCL 206.30 results in a “law impairing the obligation of contract” under article 1, § 10 of the Michigan Constitution. I conclude that it does.
Const 1963, art 9, § 24 specifies that accrued financial benefits of public-retirement and pension plans are constitutionally mandated and protected “contractual obligation[s] . . . .” Const 1963, art 1, § 10 provides that “[n]o bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted.” Stated plainly, article 9, § 24 creates an undiminishable, unimpairable contractual obligation with regard to accrued financial benefits of retirement income, and article 1, § 10 prohibits the Legislature from passing laws that *373 impair contractual obligations. Therefore, if a statutory provision reduces the constitutionally afforded contractual obligations surrounding accrued financial benefits of retirement income, that statutory provision violates these constitutional provisions.
As explained in the discussion of the previous issue, MCL 206.30(9) reduces the accrued financial benefits of public retirement and pension plans. By reducing the amount of benefits that public employees receive as part of the contractual obligation owed them by public entities, MCL 206.30(9) impairs that contractual obligation. Thus, the reduction of such benefits violates the constitutional protections afforded to contractual obligations and must be struck down.
C. MCL 206.30(7) AND (9) VIOLATE ARTICLE 9, § 7 OF MICHIGAN’S CONSTITUTION
The third issue before us is whether the income-based criteria for determining tax liability in MCL 206.30 create a graduated income tax in violation of article 9, § 7 of Michigan’s Constitution. Like the majority, I conclude that they do.
Article 9, § 7 of Michigan’s Constitution prohibits a graduated income tax. That provision states: “No income tax graduated as to rate or base shall be imposed by the state or any of its subdivisions.” This Court has previously stated that article 9, § 7 was designed to prohibit a graduated income-tax system that is similar to the federal tax system, in which tax rates increase as income increases. Kuhn v Dep’t of Treasury, 384 Mich 378, 389; 183 NW2d 796 (1971). The income-based criteria contained in sections MCL 206.30(7) and (9),[12] which increase tax liability for higher levels of income, *374 are unconstitutional. Such criteria create a graduated income tax that effectively increases the tax rate on the basis of a taxpayer’s income.
The supporters of MCL 206.30 argue that it does not directly create higher tax rates for higher levels of income because the tax rate remains flat at 4.35 percent. The supporters argue that it is irrelevant whether the effective tax rate increases as “household resources” — meaning income — increase, as long as the 4.35 percent tax rate remains intact. However, the *375 argument that MCL 206.30 is constitutional because it does not directly do what the Constitution prohibits is unpersuasive. In Butcher v Dep’t of Treasury, 425 Mich 262, 273; 389 NW2d 412 (1986), this Court stated:
It is clear that in Kuhn, by closely examining the credits, exclusions, and exemptions there challenged, we at least implied that a constitutional violation can occur hy the use of income criteria for determining their amounts. The reduction of a credit.. . would be no exception to such an implication, if... it was determined that such a reduction was influenced by income bracketing, and such factors affected the income tax liability.
While the income-based criteria in MCL 206.30(7) and (9) do not directly increase the tax rate or base proportional to income level, the effect of imposing those criteria is to create a graduated tax rate tied to income level.
For example, consider two single retirees born after 1952 who have reached the age of 67. Retiree A earns $100,000 a year, and Retiree B earns $50,000 a year. Under MCL 206.30(9), Retiree A is not entitled to a $20,000 deduction in taxable income because he or she makes more than $75,000, while Retiree B makes less than $75,000 and is entitled to the deduction. Thus, Retiree B only pays taxes on $30,000 of taxable income. With a tax rate of 4.35 percent on taxable income, Retiree A pays $4,350 in taxes, which is an effective rate of 4.35 percent on $100,000. Meanwhile, Retiree B pays $1,305 in taxes, which is an effective rate of 2.61 percent on $50,000. The result is a graduated tax rate based on level of income. The same calculations produce similar results for the income-based reduction and elimination of personal exemptions for all taxpayers found in MCL 206.30(7). All income-based criteria for *376 limiting and restricting taxable income using income brackets are unconstitutional.
Accordingly, I would hold that both MCL 206.30(7) and (9) are unconstitutional.
D. THE MAJORITY’S RESOLUTION
The final issue is one created by the majority’s perplexing resolution of this case, in light of its holding that MCL 206.30(7) and (9) violate the Constitution. I agree with the majority that the income-based factors in subsections (7) and (9) unconstitutionally create a graduated income tax. However, I disagree with the troubling method that the majority has chosen to resolve the Governor’s questions with regard to the constitutionality of those subsections. Rather than striking down those subsections, the majority carves out the sentences from subsections (7) and (9) that limit personal exemptions and deductions on the basis of income.[13] In doing so, the majority has created entirely different laws than those passed by the Legislature and signed by the Governor. Specifically, the majority provides judicially created tax exemptions and deductions, despite the fact that the Legislature did not provide such tax breaks. The majority’s decision changes the tax code and now allows individuals earning more than $75,000 annually, and couples earning more than $150,000 annually, to have their tax liability reduced. This is the opposite of what the Legislature intended.
The majority claims that it is simply severing the unconstitutional portions from the statute. However, the statutory rules of severability do not permit such an outcome. Those rules are contained in MCL 8.5, which provides:
*377 In the construction of the statutes of this state the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature, that is to say:
If any portion of an act or the application thereof to any person or circumstances shall be found to be invalid by a court, such invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application, provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be sever-able. [Emphasis added.]
Under these rules, this Court must consider whether an entire section has to be struck down or whether the unconstitutional portions of that section can be severed from the remainder of the statute. Unconstitutional language can be severed when “the remaining portions are not determined by the court to be inoperable .. . .”[14] However, that only applies if the remaining portion of the statute is not “inconsistent with the manifest intent of the legislature . . . .”[15]
In this matter, the majority attempts to justify its result by stating that the Legislature was aware that portions of 2011 PA 38 could be held unconstitutional and that those portions could be severed to keep the rest of the act constitutional. The majority asserts that members of the Legislature would have known which words from each section it passed could be held unconstitutional. This is groundless guesswork by the majority.
Moreover, the majority attempts to justify its restructuring of sections MCL 206.30(7) and (9) by arguing that the Attorney General requested this remedy in the *378 brief supporting the law. This argument overlooks a fundamental tenet of statutory analysis: the Court’s primary obligation is to ascertain legislative intent.[16] The Legislature duly enacted this statute, and the Governor signed it into law. We have a clear indication of what the Legislature intended when it limited personal exemptions and deductions of retirement income: the actual language of the statute before us.[17] Given the language of MCL 206.30(7) and (9), it is indisputable that the Legislature intended to determine tax liability on the basis of factors such as age and income, and it is also indisputable that the Legislature chose not to grant exemptions and deductions to taxpayers in higher income brackets. Raising or lowering tax liability is a highly political undertaking in this state. The Legislature, for its own policy reasons, chose not to lower the tax liability of individuals earning more than $75,000 annually and couples earning more than $150,000 annually, and it incorporated language into MCL 206.30 to fulfill this intention. While that policy decision was unconstitutional, it is not the place of this Court to make tax policy choices for the Legislature by severing *379 parts of the sections at issue. In so doing, the majority expands the exemptions and deductions contemplated by the Legislature. Such a result is clearly against the intent of the Legislature.
In this advisory matter, the Governor asked this Court to opine on whether MCL 206.30(7) and (9) are unconstitutional. Our proper role is to advise the Governor if either of these subsections violates the Constitution. Now that we have done so, it is up to the Legislature to determine whether the Income Tax Act should be redrafted — and, if so, how — in light of our ruling. Accordingly, I would follow the established rules of statutory construction and refrain from judicially creating deductions and exemptions that the Legislature clearly did not intend. I would leave to the Legislature the important role of deciding the best tax policy for the citizens of this state and limit the judiciary to its proper role of reviewing statutes to determine whether they are in accordance with our Constitution.
II. CONCLUSION
I would hold that MCL 206.30(9) is unconstitutional because it clearly violates article 9, § 24; article 1, § 10; and article 9, § 7 of Michigan’s Constitution. Furthermore, I would hold that MCL 206.30(7) is unconstitutional because it also clearly violates article 9, § 7 of Michigan’s Constitution. The majority not only fails to strike down parts of MCL 206.30 that are clearly unconstitutional, but also redrafts parts of this statute to provide tax exemptions and deductions that the Legislature clearly did not intend.
In sum, I would follow the established rules of statutory construction and refrain from judicially creating deductions and exemptions for individuals earning more than $75,000 annually and couples earning *380 more than $150,000 annually, which the Legislature clearly did not intend. Moreover, I would leave to the Legislature the important role of deciding the best tax policy for the citizens of this state and properly limit the judiciary’s role to reviewing statutes to determine whether they are in accordance with our Constitution. Because the majority usurps this important legislative function in its decision today, I dissent.

 Section 30(9) of the Income Tax Act, as amended by 2011 PA 38, is focused on “deductions” against retirees’ income. Section 30(7) is focused on “exemptions” with regard to the income of all taxpayers who qualify for the personal exemption under § 30(2).

 It is clear from the language of 2011 PA 38 that the Legislature did not intend to extend deductions or exemptions to individuals and couples with higher incomes. The Legislature specifically did not extend the deductions at issue to individuals earning more than $75,000 and couples *364 earning more than $150,000 annually. The Legislature similarly limited personal exemptions for individuals earning between $75,000 and $100,000 and for couples earning between $150,000 and $200,000. Further, the Legislature specifically prohibited individuals earning more than $100,000 and couples earning more than $200,000 from claiming any personal exemptions. Despite this legislative intent, the majority provides such deductions and exemptions.

 At the time the Governor asked this Court for an advisory opinion, 2011 PA 38 was still referred to by its public act number. It went into effect on October 1, 2011, and the provisions of 2011 PA 38 are now referred to by their statutory numbers, e.g., MCL 206.30. Accordingly, I will refer to the provisions at issue by their statutory numbers in the remainder of this opinion. Unless otherwise noted, all references to those statutes are to the amended versions.

 As to the fourth question posed by the Governor, I am not persuaded that the provision of the act basing tax liability on age violates equal-protection guarantees. However, because I conclude that the provision is unconstitutional for other reasons, I will not address the equal-protection issue in detail in this opinion.

 See Tyler v Livonia Pub Sch, 459 Mich 382, 396; 590 NW2d 560 (1999).

 The current version of MCL 206.30(1)(f) provides in pertinent part:
Deduct the following to the extent included in adjusted gross income subject to the limitations and restrictions set forth in [MCL 206.30(9)]:
(i) Retirement or pension benefits received from a federal public retirement system or from a public retirement system of or created by this state or a political subdivision of this state.
(it) Retirement or pension benefits received from a public retirement system of or created by another state or any of its *367 political subdivisions if the income tax laws of the other state permit a similar deduction or exemption or a reciprocal deduction or exemption of a retirement or pension benefit received from a public retirement system of or created by this state or any of the political subdivisions of this state.
(iv) Beginning on and after January 1, 2007, retirement or pension benefits not deductible under [MCL 206.30(1)(f)(¿)] or [MCL 206.30(1)(e)] from any other retirement or pension system or benefits from a retirement annuity policy in which payments are made for life to a senior citizen, to a maximum of $42,240.00 for a single return and $84,480.00 for a joint return. The maximum amounts allowed under this subparagraph shall be reduced by the amount of the deduction for retirement or pension benefits claimed under [MCL 206.30(1)(f)(¿)] or [MCL 206.30(1)(e)] and by the amount of a deduction claimed under subdivision [MCL 206.30(1)(p)]. For the 2008 tax year and each tax year after 2008, the maximum amounts allowed under this subparagraph shall be adjusted by the percentage increase in the United States consumer price index for the immediately preceding calendar year. The department shall annualize the amounts provided in this subparagraph as necessary. As used in this subparagraph, “senior citizen” means that term as defined in [MCL 206.514],

 The previous version of MCL 206.30(1)(f)(i), as amended by 2009 PA 134, set forth unrestricted deductions for “[r]etirement or pension benefits received from a federal public retirement system or from a public retirement system of or created by this state or a political subdivision of this state.”

 While this first issue discusses public pensions only, MCL 206.30(9) does not distinguish between private and public pensions. Because I would hold that subsection (9) is unconstitutional, I would conclude that the restrictions contained therein are not applicable to any retiree.

 “Diminish” is defined as “to make, or make seem, smaller; reduce in size, degree, importance, etc.; lessen,” Webster’s New World College Dictionary (1988), or “to lessen; decrease,” Random House Webster’s College Dictionary (1997). “Impair” is defined as “to make worse, less, weaker, etc.; damage; reduce.” Webster’s New World College Dictionary (1988).

 The majority asserts that I do not recognize the distinction between pension benefits and tax deductions. I do recognize that there is a distinction; however, that distinction is not the relevant inquiry in this matter. The relevant inquiry under article 9, § 24 is whether accrued financial benefits are diminished. It is the majority that disregards that *371 reducing or eliminating tax deductions results in the diminishment of pension benefits, which are accrued financial benefits.

 This is true because the tax exemptions are directly tied to pension income that is vested and is being paid to retirees. If this were a sales tax or some other form of tax not directly tied to a constitutionally protected form of income, we would be faced with different issues.

 MCL 206.30(7) provides:
*374 For each tax year beginning on and after January 1, 2013, the personal exemption allowed under subsection [MCL 206.30(2)] shall be adjusted by multiplying the exemption for the tax year beginning in 2012 by a fraction, the numerator of which is the United States consumer price index for the state fiscal year ending in the tax year prior to the tax year for which the adjustment is being made and the denominator of which is the United States consumer price index for the 2010-2011 state fiscal year. The resultant product shall be rounded to the nearest $100.00 increment. As used in this section, “United States consumer price index” means the United States consumer price index for all urban consumers as defined and reported by the United States department of labor, bureau of labor statistics. For each tax year, the exemptions allowed under [MCL 206.30(3)] shall be adjusted by multiplying the exemption amount under [MCL 206.30(3)] for the tax year by a fraction, the numerator of which is the United States consumer price index for the state fiscal year ending the tax year prior to the tax year for which the adjustment is being made and the denominator of which is the United States consumer price index for the 1998-1999 state fiscal year. The resultant product shall be rounded to the nearest $100.00 increment. For a taxpayer whose total household resources are $75,000.00 or more for a single return or $150,000.00 or more for a joint return, the personal exemption allowed under [MCL 206.30(2)] shall be adjusted by multiplying the exemption for the tax year for a single return by a fraction, the numerator of which is $100,000.00 minus the taxpayer’s total household resources, and the denominator of which is $25,000.00, and for a joint return by a fraction, the numerator of which is $200,000.00 minus the taxpayer’s total household resources, and the denominator of which is $50,000.00. The personal exemption allowed under [MCL 206.30(2)] shall not be allowed for a single taxpayer whose total household resources exceed $100,000.00 or for joint filers whose total household resources exceed $200,000.00.

 For the majority’s new tax policies, see ante at 347-349.

 MCL 8.5.

 Id.

 People v Hill, 486 Mich 658, 667; 786 NW2d 601 (2010).

 In Sun Valley Foods Co v Ward, 460 Mich 230, 236; 596 NW2d 119 (1999), we stated:
The foremost rule, and our primary task in construing a statute, is to discern and give effect to the intent of the Legislature. Murphy v Michigan Bell Telephone Co, 447 Mich 93, 98; 523 NW2d 310 (1994). See also Nation v W D E Electric Co, 454 Mich 489, 494; 563 NW2d 233 (1997). This task begins by examining the language of the statute itself. The words of a statute provide “the most reliable evidence of its intent. . . .” United States v Turkette, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981). If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted. Tryc v Michigan Veterans’ Facility, 451 Mich 129, 135; 545 NW2d 642 (1996).